J-S58022-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| HOWARD WESLEY WEEDON, | |
| Appellant | No. 2032 MDA 2014 |

Appeal from the Judgment of Sentence of October 30, 2014
In the Court of Common Pleas of Franklin County
Criminal Division at No(s): CP-28-CR-0002284-2013

BEFORE:  GANTMAN, P.J., OLSON AND PLATT,* JJ.

MEMORANDUM BY OLSON, J.:                    **FILED JANUARY 14, 2016**

Appellant, Howard Wesley Weedon, appeals from the judgment of sentence entered on October 30, 2014 in the Criminal Division of the Court of Common Pleas of Franklin County.  We affirm.

The trial court thoroughly summarized the facts and procedural history in this case as follows:

> On November 3, 2013[, the Commonwealth charged Appellant with, *inter alia*, rape of a child, involuntary deviate sexual intercourse with a child, aggravated indecent assault of a child, indecent assault of a child, and endangering the welfare of a child [18 Pa.C.S.A. §§ 3121(c), 3123(b), 3125(b), 3126(a)(7), and 4304(a)(1)].  A two-day jury trial was held on July 23 and July 24, 2014.  During the trial[, the testimony established the following facts.]
>
> The above charges arose from incidents spanning from the fall of 2008 when J.N.[, the child victim in this case,] was eight or nine years old to August of 2013.  The Commonwealth [based its case] primarily on the testimony of J.N.  According to J.N.'s testimony, during this time period Appellant raped J.N. on

* Retired Senior Judge assigned to the Superior Court

several occasions in the trailer that they lived in and in the shed located near the trailer. J.N. lived in the trailer on and off until August 2013 when her second cousin [H.M.] became her legal guardian. Appellant lived in the trailer since J.N. was three. Counsel stipulated that Appellant was not available [during the following periods] to commit the alleged crimes: June 13, 2009 to November 6, 2009; September 24, 2010 to May 14, 2012; and August 31, 2012 to November 20, 2012.

J.N. testified that Appellant first raped her sometime in the fall of 2008. That rape occurred on a school night when her mother was working and her sister was in bed. J.N. was watching Appellant play videogames at around 12[:00] a.m. Appellant persuaded J.N. to drink some alcohol then took her out to the shed. Appellant then said he wanted to take pictures of J.N. because he knew she wanted to be on [television]. He asked her to take off her pants to which she responded "no," but he took them off anyway. Appellant took off J.N.'s underwear. Appellant then laid J.N. down on the ground, pulled his pants down, got on top of her, and put his penis in her vagina. J.N. testified that "[h]e was going back and forth and just trying to get it in but it wouldn't." Appellant eventually stopped and the two went back inside the trailer. Appellant then told J.N. to go to bed and told her not to tell anybody.

J.N. testified that a "couple weeks" later Appellant raped her for a second time. Again, it was a weeknight when her mother was at work. J.N. was sleeping in her room and Appellant went into her room, woke her up, and told her "he wanted to do it again." Appellant took off J.N.'s pants and underwear again. Appellant took off his clothes and laid her down on the bed on her back. Appellant then spread J.N.'s legs open and put his penis in her vagina. His penis went all the way in that time. J.N. testified that it hurt very badly. She stated that it lasted about an hour. Appellant made J.N. promise not to tell anybody.

J.N. testified that when she was in seventh grade Appellant sexually assaulted her "like every other day except for the weekend," and the assaults "jumble together." During seventh grade J.N. turned 13 years old. Before she turned 13 years old Appellant sexually assaulted J.N. in the shed, the bathroom, and her mom's room, occurring most often in the shed and bathroom. On these occasions Appellant "would make [her] take off [her] clothes and then he would lay [her] on [her] back and

just start." When Appellant assaulted her in her mother's room "[h]e would lay [her] on [her] back and it was kind of on the edge of the bed and he would get on top of [her] and move back and forth." When the assaults happened in the bathroom Appellant would sit J.N. down on the toilet, hold her legs apart, and start having sex with her. J.N. also testified that Appellant had made her put his penis in her mouth prior to her turning 13 years old. On those occasions Appellant would move his penis up and down in her mouth for about two or three minutes and then stick it in her vagina. She stated that on one or two occasions Appellant put his mouth on her vagina and stuck his tongue inside her. Appellant also stuck his fingers inside of her "but it wasn't very often." J.N. testified that on one occurrence in the shed Appellant ejaculated and wiped it on her. She described it as white and sticky. Appellant also made her smoke marijuana with him a couple times, drink alcohol a few times, and watch porn once or twice.

J.N. testified to the final time that Appellant raped her. It was in August of 2013 when she had wanted to go on vacation with [H.M.]. J.N.'s mother said she could not go. Appellant told J.N. that if she had sex with him he would allow her to go on vacation with [H.M.]. J.N. testified that on that day she and Appellant were sitting in the living room and Appellant made her smoke marijuana. He then took her to the bathroom and had sex with her.

On cross-examination[, counsel for Appellant] questioned J.N. about the inconsistencies in her story as it related to her initial interviews and her testimony at trial. J.N. replied that her story had not changed but rather had cleared up in her head. J.N. told Children and Youth [Services (CYS)] that the first rape occurred on a couch in the shed. However, she testified at trial that it happened on the floor. She also told [CYS] that she only drank alcohol one time but testified at trial that it happened a few times. J.N. told [CYS] and a doctor and nurse at the hospital that she did not experience any pain during the sexual encounters but at trial stated that the pain was an 11 on a scale from 1 to 10. She told [CYS] that Appellant's penis never touched anywhere but her vagina. However, in a second interview with [CYS] she stated that his penis touched her mouth. When asked by [CYS] where the incidents occurred[,] J.N. said the shed and bathroom but did not mention her mother's bedroom or her own bedroom. However, in a second

interview with [CYS] she said it also occurred in her mother's bedroom. When asked why she sometimes said no to certain questions in different situations J.N. testified that she feels uncomfortable and "get[s] all jumbled up and stuff and I can't really think right."

The Commonwealth also presented two video recordings of interviews of J.N. conducted by [Nicholas] Ranney an intake caseworker at Franklin County [CYS]. The video interview recorded on October 25, 2013 was admitted as Commonwealth's Exhibit 6. The video interview recorded on October 29, 2013 was admitted as Commonwealth's Exhibit 7. Mr. Ranney testified briefly as to the interviews.

[Jennifer] McNew is a forensic nurse consultant at Meritus Medical Center. She was qualified as an expert witness and testified in the area of pediatric forensic medical examinations and child sexual assaults. Ms. McNew conducted a forensic interview of J.N. and a medical exam which included a "special look" at the genitalia area. Ms. McNew's findings regarding J.N.'s genitalia were that J.N. "had a normal exam." However, she stated that over 90% of exams in cases where children allege to have been sexually assaulted come back normal. J.N.'s test came back negative for sexually transmitted diseases.

[Dr. David] Turkewitz, Chairman of Pediatrics at York Hospital Wellspan was qualified as an expert witness in the area of pediatric forensic medical examinations and child sexual assaults. Dr. Turkewitz testified that over 95% of children who are sexually abused have normal exams. He stated that the fact that J.N. had a normal exam had no bearing on whether she was sexually abused despite her claim that she had been raped several times. Dr. Turkewitz's opinion that J.N. was raped was based [on] what J.N. told Ms. McNew. Dr. Turkewitz wholly disagreed with each point made by defense expert witness Dr. [Robert] Stratton.

Dr. Stratton, an emergency room doctor, was qualified as an expert witness in family medicine. He testified that to a reasonable degree of medical certainty he did not believe that there was evidence of penile vaginal penetration of J.N. He based his opinion on the criminal complaint, the report from Ms. McNew, the Gettysburg Hospital lab reports, medical reports of Appellant, and literature regarding specific aspects of the case.

- 4 -

Dr. Stratton testified that if [J.N.'s] story were true, *i.e.*, she was raped numerous times by Appellant, that the medical exam likely would have showed some kind of trauma to her vaginal area given the size difference between Appellant and J.N. He also based his opinion on J.N.'s lack of bleeding and her lack of exposure to [sexually transmitted disease]. The fact that these factors were not present led him to believe that J.N. was not raped by Appellant.

[H.M.] is J.N.'s second cousin and the current legal guardian of J.N. She took custody of J.N. shortly after the final rape took place in August 2013. [H.M.] testified about two months after J.N. had moved in J.N. told her that Appellant had sex with her in the past. The next morning [H.M.] set up an appointment with J.N.'s eighth grade guidance counselor. Later that afternoon, [H.M.] set up an appointment for J.N. with Mr. Ranney from [CYS]. The only information [H.M.] had about the sexual abuse is what J.N. told her. [H.M.] testified that she did not tell J.N. what to say to the police.

[R.H.], the mother of J.N. and long-time girlfriend of Appellant, testified for the defense. [R.H.] knew Appellant for 12 years. [R.H.] testified that she believed J.N. fabricated the allegations against Appellant because [H.M.] put her up to it. [R.H.] was shocked by the allegation[s] when she first heard them. She testified that she has genital herpes and has had chlamydia and believes she got those sexually transmitted diseases from Appellant. When asked [on direct examination] whether she believed that Appellant committed the sexual assaults [R.H.] stated she did not. On cross-examination the Commonwealth asked [R.H.] whether she thought Appellant was capable of committing a crime like this to which she responded that she did not. After consideration by the [trial c]ourt as to whether to allow the testimony, the Commonwealth asked [R.H.] about whether she informed a Pennsylvania State Police trooper in August of 2013 that Appellant had raped her. [R.H.] responded that she did. She subsequently testified that the allegation was a lie she made up in a panic and lied to police in order to get them to come to her residence because she and Appellant were arguing.

On July 24, 2014[,] the jury found Appellant[] guilty of [the above-referenced charges.] On October 30, 2014[,] Appellant was sentenced to an aggregate sentence of 34 to 68 years of

incarceration and determined to be a sexually violent predator. On November 26, 2014[,] Appellant filed a [n]otice of [a]ppeal followed by a [c]oncise [s]tatement on December 23, 2014.

Trial Court Opinion, 2/27/15, at 1-7.

On appeal, Appellant raises the following questions for our review:

Whether the trial court abused its discretion by allowing the district attorney—pursuant to Pa.R.E. 404—to elicit character and "prior bad act" testimony when cross-examining a defense witness, [R.H.], regarding a prior rape allegation she had made against Appellant when (a) the district attorney did not provide defense counsel with notice of his intent to introduce such evidence prior to trial and the district attorney did not show "good cause" as to why its failure should be excused; (b) the district attorney did not provide an acceptable reason for admitting the evidence; (c) the evidence had no probative value regarding the charges at issue, but it was highly prejudicial to Appellant; and (d) defense counsel did not "open the door" to such testimony by his direct examination of the witness?

Whether the trial court abused its discretion in denying Appellant's motion for a mistrial after the district attorney questioned [R.H.] regarding a prior rape allegation she had made against Appellant given the obviously prejudicial nature of the testimony in a rape trial?

Appellant's Brief at 13-14.

We carefully reviewed the submissions of the parties, the certified record, and the opinion of the trial court. Based upon our review, we conclude that the trial court accurately and adequately addresses each of the contentions Appellant raises on appeal. *See* Trial Court Opinion, 2/27/15, at 7-17. For this reason, we adopt the trial court's opinion as our own and hold that Appellant is not entitled to relief for the reasons set forth therein. *See* *id*. We direct the parties to attach a copy of the trial court's opinion to all

subsequent filings concerning our disposition of this appeal; however, the names of H.M. and R.H. must be redacted.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/14/2016